Our next case is Ross V. Superintendent of Phoenix State Correctional Institute, 2272. Good morning, counsel. Is it Ms. Xie? Xie. Xie, good morning. Good morning, Your Honors. May it please the Court. John Ning Xie arguing on behalf of Appellant Tola Ross, and today I would like to reserve two minutes for rebuttal. Sure. On October 27, 2022, Tola Ross woke up in his prison cell at SCI Phoenix and believed that he would be free based on the plain language of the district court's order that the petitioner Tola Ross shall be released from custody unless the Commonwealth of Pennsylvania reinstates his right to appeal within 90 days. That 90-day deadline originated in this court's prior mandate from August 10, 2022, which held that Mr. Ross's trial counsel Let's go back to the very beginning just to get a few things. He pled guilty, but then right after he pled guilty, he had concerns that perhaps that was the wrong tact to take. Yes, Your Honor. The record at the PCR hearing indicated that his perspective was that he had received misinformation from his plea counsel, and he believed that it would have been relatively straightforward for him to withdraw the plea after it had been made, and that was just not the case. That was not the same day he attempted to reach out to his counsel, and he wrote a letter saying that my plea was not voluntary and it was not willing, and that is how this all started. That's what initiated the 18 years that Mr. Ross litigated until this court's mandate in order to reinstate that right to direct appeal so that he could challenge that plea. And that is now what is on appeal through the Commonwealth state system. Is that correct? No, Your Honor. The claim that was filed by the state court-appointed appellate counsel was an ineffective assistance of counsel claim. I got it. Okay. And what did the Superior Court decide? The Superior Court did affirm the conviction. It found that the ineffective assistance of counsel claim wasn't cognizable on direct appeal. So in reality, Mr. Ross did not get a ruling on the merits of his claim that his plea was involuntary or willing. Wouldn't that always be a collateral attack? Not necessarily, Your Honor. So we are in a unique position here where the direct appeal that was reinstated happened after PCRA proceedings, so there's actually information on the record that would go to indicate the involuntariness of the plea that was testified to at the PCRA hearing. You have the letter from Mr. Ross that is in the court file indicating that he thought his plea was involuntary. And those could have been used to direct appeal, but what was appealed was not cognizable on direct appeal. So really, he had a meaningful, illusory direct appeal. So it was like they're playing catch-22 with him. Exactly, and he's been trying to litigate the same thing for nearly two decades. All he wants is to say, my plea deal was not fair, and I want the opportunity for court to hear it. Is that all he wants, or does he want to be released? Well, in this case, yes. That's a big difference. You know, the heart of why we're here today is because the Commonwealth did not comply with the conditional writ order that this court instructed the district court to issue. He was pro se at the time, right, when this case was in front of the district court? Yes, he was always pro se in all proceedings in the district court. He was appointed counsel in the prior appeal to this court, but afterwards, you know, that counsel was not involved in any further proceedings. That was the NPO, or not presidential opinion, that we issued in 2022? Yes, Your Honor. Let me go back to the remedy here. What's the remedy you're seeking? The remedy we're seeking here is really the remedy that's at the heart of any habeas corpus proceeding, is release. That comes from the Supreme Court's jurisprudence in Wilkinson. This comes from other case law in this court. Just to be clear, you're talking release on bail conditions, or are you talking about vacating the guilty plea and go home? No, Your Honor. We're talking about unconditional release, which is the typical remedy when the Commonwealth or the state violates the terms of a conditional writ order. So he really can't, effectively, a release on bail wouldn't do anything for him, because his conviction has been affirmed by the Superior Court, so it's very unclear what the release on bail would. His initial sentence back around 2006 was what, 27 1⁄2 to 60? 27 1⁄2 to 60, and he has served 20 1⁄2 of those years. So you'd have another seven years, roughly 2031 or so, 2032. Yes, to be eligible parole. But I will point out that that is not really relevant to the legal issue that is before the court, which is about the Commonwealth's compliance with the conditional writ order. The conditional writ order, you're the district judge. You just get a motion for extension of time. It's almost always granted, does it? In this case, however, the time was up on October 26th. Nothing happened, and what are the consequences of that? In the district court, does it even have the authority to grant an extension when the mandate came down from the Third Circuit? Yes, Your Honor, that's exactly right, and I understand that extensions are commonplace, but we are in a unique circumstance here where the Commonwealth took no action prior to the 90-day deadline. They were notified repeatedly of this court's mandate and the district court's order. Well, I hear there's no doubt about that. And they took no action, and so we would argue that that is not really no compliance, but it's definitely not the substantial compliance that's required under this court's opinion and makings. Let's assume we accept the Commonwealth's representations here that the file got passed around a few times, right? The extension motion? No, after the 90 days had run. Okay. Somebody had left or been transferred to another unit, and it fell through the cracks. So at some point now you're beyond the 90 days. The Commonwealth realizes, wow, we're beyond the 90 days here. What should they have done? Well, I would argue that they should have reinstated. From a practical perspective, what should they have done? Well, they should have immediately filed an extension motion in the court. It seemed like they waited a day to do so, and they should have requested that that hearing in state court be held immediately. In what court? In the Pennsylvania State Court. No, you said they should have filed an extension motion in the court. Oh, in the Third Circuit, I'm sorry. In other words, you have the court that issued the NPO in 2022 change its mandate to give the extension? Yes, Your Honor. And this court's mandate was clear. It stated 90 days. It could have said the district court could set a time period like it did in Gibbs or in Vasquez, or it could have. Were those habeas cases? Yes, those were all habeas. And Gibbs was a district court, has authority over its own orders, but not necessarily does it apply to something with respect to what the Third Circuit does by way of a mandate. Yes, Your Honor. And this court would have had the discretion to extend that if it had been asked to, but it was not. And the standard under which this court would have analyzed the Commonwealth's actions were reasonableness. So under Gibbs, the Commonwealth has to provide a legitimate reason for ignorance of this deadline. And the cases that I found that are most kind of like similar to the circumstances here, which are very rare, are this court's panel opinion on presidential in Lincoln and then Gilmar versus Bertrand in the Seventh Circuit. So those are both reinstatement of direct appeal cases. The court in both cases did grant an extension. But what differs from those two cases and what we have here is that the Commonwealth took some sort of action. They attempted to comply with that order prior to the deadline that the court set. In Lincoln, the Commonwealth needed to reinstate the right to direct appeal in the Superior Court, so they filed something in the Superior Court to do that. When they realized that they couldn't get that order in the Superior Court, they went to the Court of Common Pleas and got a order reinstating those direct appeal rights prior to the deadline that was set. In Gilmar, the process in Wisconsin is a little more complicated to do reinstatement of direct appeal. And the state there called the – I believe it was like an attorney general's council who was, you know, in charge of enforcing it. But she called the local district attorney, called the local public defender. And so she had at least made some effort prior to expiration of the deadline, and that's not what we have here. I understand your position that the best course of action would have been to do something prior to the deadline. But I think a few minutes ago you conceded that even after the deadline, if a motion had been filed with this court, let's say to recall the mandate, to grant an extension, whatever it was, this court would have the discretion to do that. Then I understood you to say that it would be this court that would determine the reasonableness of the excuse that was given. I'm curious to know your thoughts on the reasonableness of the excuse that was given. Why wasn't what was provided sufficient? Had it been provided to this court? So I think it really is the complete lack of compliance within that 90-day period. That's our primary argument. But also, even if there was an attorney turnover, there are supervisors in that office. There was a supervisor, Matthew Stiegler, who was on the Commonwealth's prior response brief in the prior appellate mandate. And the Commonwealth did not say anything about whether Matthew Stiegler had responsibility for this. We know that notifications were sent to a DA Federal Litigation Unit email. That's in the Commonwealth's prior appearance in the prior mandate. And someone should have been at least trying to comply with that mandate. And that's what we find to be unreasonable. So let me go back to the remedy. Maybe you've hung up on the remedy here, right? So let's assume that we agree with your argument. And you're asking us for, I think you call it, unconditional release? Unconditional release, yes. Could the Commonwealth arrest him as soon as he stepped out of the prison? He could. Only in extraordinary circumstances can a habeas petitioner obtain a bar to re-prosecution. That's the court's opinion in Wilson. That's not what you're asking for here. If the court is not opposed to it, we wouldn't be opposed either. But that's not necessarily what we're asking for. I want to be clear as to what you're asking for. We are asking for unconditional release and vacater, which is the remedy that is typically granted when the Commonwealth fails to comply. Vacate what? Vacate the conviction. Oh, you're asking for us to vacate the conviction and release him? Yes, Your Honor. Because the Commonwealth... Fundamentally... If I understand you correctly, you're asking us to vacate the conviction and release him given the Commonwealth's failure to comply with the 90-day mandate. Yes, Your Honor. And that's not an extraordinary remedy. That is the remedy that is commonplace, that was set out in the Supreme Court's opinion, Wilkinson v. Dotson, said that the remedy for a habeas petitioner is release, unconditional release. In certain cases, the state can set a conditional deadline and allow the state to remedy, and I see I'm out of time, can allow the state to remedy its constitutional violation. But when that timeline exceeds, the habeas petitioner is entitled to release. And in this case, it was his conviction that was infirm, that was what he was pleading, is that his Sixth Amendment rights and his Fourteenth Amendment rights were violated because his trial counsel failed to perfect his right to a direct appeal. The argument against that would be that there was no incurable error that justified release because his conviction and sentence were never found to be constitutionally infirm yet. And the remedy to which he was entitled was reinstatement, or that he was seeking was reinstatement of his appellate rights. So we disagree with that categorization. So the original mandate on this court from 2022 found a Roe v. Flores-Ortega violation, which in essence challenged the conviction itself, not the sentence, because the petitioner was completely denied an entire legal proceeding that he's entitled to under state law due to ineffective assistance of counsel. So we would argue that that finding was actually a finding that the conviction was infirm, but the Commonwealth had 90 days to remedy that infirmity, and they did not. So I think what's getting confused here is, you know, a condition, which is that the Commonwealth needed to reinstate those direct appeal rights, and then there's a consequence when that conditional writ is not complied with. Good morning, Your Honors. My name is Mackenzie Hayes. On behalf of the Commonwealth as appellees, I would first like to thank you for the opportunity to argue my first case in front of this court. I'm excited to be here today. They sent you on a kamikaze mission, didn't they? I'd like to also just kind of jump right in to some concerns that you raised. So actually, what happened here? I mean, you had all kinds of notices that you had to restore the appellate rights, and 90 days elapses, and then three weeks later, it's like somebody discovered an oh-my-God moment, and this ain't good. And so they filed, you know, as quickly as they can, something with the district judge who probably without, you know, were I the district judge, I probably wouldn't have thought about it either, and grants it. But here you've got an order of the Third Circuit that you can't ignore. So what do we do about it? Because it's pretty hard to say you have the district judge had the authority to grant the extension. Not that he knew it at the time, but looking back, so what do we do? So is your question about what happened on our end? Well, let's start with what happened. Okay, yes. So we don't dispute that we messed up. We negligently missed this. We tried to piece together exactly what happened. At the time, our major trials unit was getting caught up on a COVID backlog. A bunch of people were involuntarily pulled from our post-conviction units and moved down there. The attorney who was assigned to this was one of those attorneys. Did they not have the same e-mail address to get notifications? He presumably did get those notifications, and again, we dropped the ball. Our belief is that he believed that it was being handled by someone else and that he didn't have to continue handling it since he'd been moved units. The supervisory definitely fell apart there. We're really not sure exactly what happened there, except that it seemed a few people thought someone else was handling it. We have changed our system since then so that this doesn't hopefully ever happen again because we realize the gravity of that error. Do you agree that the district court didn't have jurisdiction to give anybody an extension? Our understanding at the time was that they would have. No, no, no, now, here and now. Do you agree that after that 90 days, the district court lost jurisdiction? It didn't comply with the mandate? They did not comply with the mandate. That's correct. They did go past the 90 days. Based on Gilmore, we believe that this is still the appropriate court to act. You can certainly hold today affirmatively that the district court does not have that jurisdiction, and we would take that into consideration. When you look at the, you know, you cite the Briggs decision, the 1948 Supreme Court decision, and that's a case where all the court did was a small alteration by adding interest in, and the Supreme Court says no can do. This is significantly more important than that. I think the difference there is that that interest was added in on top as opposed to just extending the deadline to give them the same relief that they were already entitled to. But here we're talking about a constitutional, possible constitutional violation of ineffective assistance of counsel, and that seems to be pretty important. I mean, it seems, I don't see a way around Briggs at all. Okay. My response to that would be we're actually not talking about ineffective assistance of counsel today. That is very much at the core of this, but here today we're arguing about this 28-day deadline and what the remedy should be for, excuse me, this 28-day extension past the deadline and what the remedy should be for that. What should the remedy be? It's not very satisfying, but I think maybe in this case there, he's gotten every remedy that he would be entitled to. If we walk this out, he was only entitled to the reinstatement of his appellate rights. So if the district court had, which they could have, converted that to an absolute writ and released him that day, he would still only be entitled to the reinstatement of his appellate rights. So he could have gotten out of prison on that day, but he wouldn't suddenly be entitled to more. He would have gotten his appellate rights reinstated. The writ would have been fulfilled. He could have been taken back to custody. But the mandate that came down is imposed an obligation with an X period of time, 90 days, with a consequence if the time isn't met. So if the time wasn't met, what would the normal consequence be in the typical run-of-the-mill case? I think it just depends. I don't think there is a typical run-of-the-mill case that you can say, it would be okay here, it would not be okay here. It's reasonableness under the circumstances, so it's always going to be pretty fact-specific. And I can think of plenty of fact-specific examples that would not be reasonable and not be okay. In this instance, I don't think we've met that bar. We definitely dropped the ball by missing all those notifications. We have no good excuse for that. But we pretty quickly fixed the error. We agreed. But you waited three weeks, not pretty quickly. Relatively speaking, compared to some other cases I've seen where they have granted release, let me make sure I have the right case in front of me here, such as in Mickens-Thomas, that when they released him, that was four years of bad faith. I believe the way they phrased it was willfully failing to comply and actions giving rise to an inference of retaliation or vindictiveness. Even in that case, he was entitled to release but not vacation of his convictions. I want to make sure I understand your position on something. Judge Restrepo asked you a question a minute ago, and I think I understand the answer, but I want to make sure. As I understand it, Judge Restrepo is asking you, the Court of Appeals says district court, enter into order, granted conditional writ, set 90 days. Does the district court have authority to change the number of days that the Court of Appeals ordered the district court to set? You say yes. I say our belief when we filed in the district court. No, the question is now. All right. No, it sounds like that's correct. And we truly don't oppose any of that. At the time, the way we read it, we could go to the district court to do that. If the rule is that we can't do that, understood. We won't try to do that again in the future. How was it read to suggest you could go to the district court? Well, the district court. 90-day mandate. Because the district court was the one who had issued the grant of the writ, and we assumed they had the authority to supervise compliance with the order. They implemented the mandate. Yes. But I absolutely hear what you're saying, and we don't disagree that perhaps the right procedure moving forward should be go to the Third Circuit. The district court doesn't have the authority. We just don't believe that in this instance, given that it was arguably unclear that we should be punished for it or that Mr. Ross should be entitled to some sort of. I'm trying to figure out what was arguably unclear. Well, maybe we did just mess up. Maybe we were just wrong in that instance, but we still disagree that the remedy should be some sort of punishment for negligence. The problem you run into is that all the time we deny prisoner habeas petitions on highly technical procedural grounds. It happens repeatedly. And why should we treat you any differently than we would treat the other side if they don't comply with the procedural ground, especially in this case where it's arguable, probably the case for sure I think, that the district court didn't have any jurisdiction to grant any extension? I'm sorry. Could you repeat the first part of your question? I lost my train of thought. When we deny petitioners, prisoner habeas petitions, time and again, and why is it you on the other side are different? I don't think that we're necessarily different. There are instances where the defendant can. I mean, especially when you've got four reminders and then waited three weeks after the deadline. I mean, this is like in no look of too good. I don't disagree that it doesn't look great. We messed it up. We missed the deadline. We shouldn't have done that. I just don't think the appropriate remedy is release, or if it is release, it's certainly not vacating his conviction. That's just an extremely disproportionate remedy for a mistake that we made, but that we didn't make in any sort of bad faith. There was new facts in the motion for them to consider that we had already got it listed. Again, of course, we should have done that sooner, but we did as soon as we realized the error, get it listed as soon as we could. And it's de minimis prejudice to Ross. He's kind of arguing and trying to bring in all this other stuff, saying that he didn't have his effective assistance of counsel, but that's already been litigated and handled by the habeas grant. So now we're really just arguing about this error, and as far as that goes, had he been released on the day that he could have been, at most, he would have been out for 28 days. He would have had those rights reinstated, just assuming the same timeline, and then he would have been back into custody. So it makes little sense to release him now when he's already gotten what he was entitled to, and it certainly doesn't make any sense to vacate his convictions over this kind of a mistake. Did you have any further questions, or do you want me to just keep talking? All right, well, we would ask that you affirm the district court's orders in this case, or at least not. I do, actually. I do have a couple. How unfair would it be to have you just retry the case? It feels pretty unfair when his – again, he's arguing of this ineffective assistance, but his conviction has never been found to be unsound. That puts the burden on you to remedy the error that your office made. Right, but that's quite a heavy burden for a pretty short error that a staffer – I don't want to minimize the error. It was a big error. Let me not keep saying that. But the consequences of it, it was within a month that we got everything remedied. Because everything that happened was within the control of not you, but your office. Everything. All you had to do was obtain a hearing date and appear. It was as simple as that. And something, you know, in the private world, it's malpractice. This, at least, doesn't involve that. But there are consequences to something like this, and we're trying to figure out what's the best way to try to handle it because it's a mess. Fair point, point taken. You know, my position still would be that, yes, we messed up, but there doesn't necessarily need to be some sort of extra punishment or giving the defendant something extra. Well, as I understand your argument, it really boils down to no harm, no foul. In this instance, yes. That's what your argument is at the end of the day. In the facts of this case, correct. Of course, there is foul in that we should have, you know, we should have. No harm. Yes. Like, there's foul, but the harm is minimal. He did have an extra delay waiting on his direct appeal to be decided, given the 28-day delay in having the rights reinstated. But he still hasn't put forth any argument or any facts that if his attorney had done a better job, that he would have won his appeal. Even the best attorney in the world can't make up a claim that a plea was involuntary if the record doesn't support that. It's almost like your argument, despite all of these things, is that Ross, Mr. Ross, receives no remedy at all, nothing. He, correct, in the circumstances of this case, because he was not released the day that the deadline expired. He could have been. We don't dispute that, but that's not what happened. At this point he has gotten what he was entitled to. So it is, it's not a very satisfying answer. It's not a very comfortable place for me to be and say no harm, no foul. But I think in the specific circumstances of this case, certainly there could be many different factual patterns that I would not be standing up here and saying no harm, no foul. But I believe in this instance we do have to look at the de minimis prejudice. And even if we used the excusable neglect pioneer factors that Mr. Ross has suggested that we should look at, we don't have a good reason for the delay. It wasn't our control. But the other factors kind of weigh in our favor too, the minimal prejudice, the relatively short delay, and that we were acting in good faith. We did agree to this relief. So we didn't agree that he should have his appellate rights reinstated and then in bad faith try and make sure that he didn't get his appellate rights reinstated. The opposing counsel argues that the relief should be release and vacating the conviction. And we've been talking primarily about release. What is your response to vacating the conviction? All the case law that I've seen where even there was this long, and I may have missed something, I admit, but what I've seen over and over in the case law is even in these instances where the state was acting in a vindictive way, like clearly acting in bad faith, dragging it on, like in Mickens-Thomas with the parole board that wasn't complying with the orders, that was four years of delay and he was released on parole, but he was still not entitled to vacation of his conviction. And I believe that's the case in all of the kind of case law that I've seen at least, is that even in the more extreme cases, they don't vacate the convictions, especially where the conviction was never found to be. So you're relying on Mickens-Thomas then for that? Yeah, in part, yes. But I would say that's the pattern that I've seen throughout the case law, is that it does seem to be even when it's really vindictive they don't get release. And like the Gentry case in the Sixth Circuit, yes, sometimes you're entitled to vacate her, but in that case she had been ordered a new trial, she had been released, but they never tried her again. So they vacated her convictions because that was necessarily contemplated within the order to retry. We don't have that in this case. The only thing that was ever found constitutionally infirm was his right to direct appeal. If they want to argue now that it was ineffective assistance of counsel in this new appeal, that's a new claim, and that's kind of unrelated to why we're here. Not unrelated, but tenuously related to why we're here today. And then one other question, which relates to the actual granting of the extension. When you do grant extension, assuming for the moment that the court had the authority to do that, aren't you required to make a finding of excusable neglect? If this court felt it was appropriate to remand to have that sort of hearing, we wouldn't be opposed to that, but I don't think it was necessary. Isn't that the holding of our case in DRIP, that there's no discretion to avoid making a finding when granting such a motion? I'm unfortunately unfamiliar with that exact case, but assuming that you have accurately recited that, which I assume you have, we would say that it was just clear from the record already that this was excusable neglect, but we wouldn't be opposed to if you think it's appropriate to remand to make that finding. That's reasonable. Thank you. Thank you. So would it be reasonable to send it back to the district court and make a finding? That is certainly within this court's authority, Your Honor. We don't think it's necessary because of what's already in the record, and I can enumerate the facts that this court can find in the record, if this court would like, that will already make it able to determine reasonableness or excusable neglect. So first, we know that there was no action in state court until November 15, 2021. That comes from the state court docket. Number two, we know that Michael Scalera was notified, and he still had access to his email despite transferring departments. Even if he assumed that the matter would be handled, once he had received notification of that letter from Mr. Ross on, I believe it was October 27, 2022, saying that the conditional rate had not been complied with, he should have reached out to the unit. That's when it comes to a fact where you don't just assume that something is done. Third, that there was a general federal litigation email that was enrolled in ECF notices, and so other people in that office certainly knew about this deadline. And then finally, that the Commonwealth had discovered, in its word, its error around November 15, 2021, and still took another eight days to request a hearing. And we know from Lincoln that it is possible to get that reinstatement on a very quick turnaround, I believe a matter of a day or so. And when that hearing actually happened in state court, it's two pages of transcript. It really didn't take very long. It is, at most, a two-step process in the state of Pennsylvania. And I would also like to address the characterization of the harm to Mr. Ross as de minimis. I understand 28 days doesn't seem like a lot on paper, but it is 28 days that he is spending in prison when he was not supposed to be. The liberty interest is one of the greatest interests protected by the United States Constitution. And you have the holdings in Satterley in the Sixth Circuit and Harvest in the Ninth Circuit that say that even a day of unconstitutional incarceration is irreparable harm. And so we contest this characterization of the harm to him as de minimis. And then finally, we have cited in our reply brief multiple cases where failure to reinstate direct appeal rights is a warrant of conviction, a vacater of conviction. That's the Seventh Circuit recent presidential ruling in Pope v. Taylor. This didn't happen in the district court, but St. George v. Philadelphia, which was a conditional writ that was affirmed by this circuit. The words of the conditional writ said that St. George's direct appeal rights should be reinstated or he will be released and his conviction vacated. So the Commonwealth in that case did comply with that conditional writ, and so it didn't become an issue. And we're only here because we're in an extraordinary circumstance where the Commonwealth did not comply with this writ. And what Mr. Ross is asking for is simply the remedy that is guaranteed by the Supreme Court, the remedy that has always been the remedy under habeas corpus law, and that's his release. And in order to ensure that release, his vacater of the conviction. Thank you, counsel. Thank you for your arguments and your briefs. We'd like to see counsel at sidebar. Ms. Winkleman, will you be good enough to join us? Yes. May I include the head of our federal immigration unit? Sure.